UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANN F. HORNE,

      Plaintiff,

v.                                                   Case No.:  2:20-cv-181-JLB-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Ann F. Horne filed a Complaint on March 19, 2020.  (Doc. 1).

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("SSA") denying her claim for supplemental security

income.  The Commissioner filed the transcript of the administrative proceedings

(hereinafter referred to as "Tr." followed by the appropriate page number), and the

parties filed a joint memorandum detailing their respective positions.  (Doc. 21).  For

the reasons set forth herein, the Undersigned recommends that the decision of the

Commissioner be **REVERSED AND REMANDED** pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g).

## I.  Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.      Procedural History

Plaintiff applied for supplemental security income benefits on March 30, 2017, alleging a disability onset date of October 22, 2016.  (Tr. at 437, 538).[1]  Plaintiff's claim was initially denied on May 5, 2017, and again upon reconsideration on August 16, 2017.  (*Id.* at 457, 466).  On August 14, 2018, Administrative Law Judge ("ALJ") Eric Anschuetz held a hearing that Plaintiff failed to appear for, but her attorney appeared.  (*Id.* at 373-94).  Because Plaintiff failed to appear, the hearing was rescheduled.  (*See id.*).  On December 13, 2018, ALJ Anschuetz held a second hearing that Plaintiff and her attorney attended.  (*Id.* at 258-315).  The ALJ issued an unfavorable decision on March 20, 2019.  (*Id.* at 102-18).  The Appeals Council subsequently denied Plaintiff's request for review on January 27, 2020.  (*Id.* at 1).  Plaintiff filed her Complaint in this Court on March 19, 2020.  (Doc. 1).  The case is ripe for review.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

III.       **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since March 30, 2017, the application date (20 [C.F.R. §] 404.971 *et seq.*)."  (Tr. at 110).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "general anxiety disorder; opioid dependence, chronic back pain secondary to degenerative disc disease and status post C6/7 discectomy in 2016, carpal tunnel syndrome, and pancreatitis (20 [C.F.R. §] 416.920(c))."  (*Id.*).  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 416.920(d), 416.925 and 416.926)."  (*Id.*).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 [C.F.R. §] 416.967(b) except the claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds.  The claimant can stand or walk for four hours in an eight hour workday.  Sit for six hours in an eight hour workday.  Never climb ladders, ropes, scaffolds, but frequently climb ramps and stairs.  Unlimited ability to balance, stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to environmental dusts, odors, fumes, and gases.  Limited to simple routine repetitive tasks.  Must alternate sitting and standing while remaining at her workstation.  Must use a cane to get to and from her workstation.  Limited to frequent handling and fingering.

(*Id.* at 112).  The ALJ also determined Plaintiff did not have any past relevant work. (*Id.* at 116).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 [C.F.R. §§] 416.969 and 416.969a)."  (*Id.*).  Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform the following jobs that exist in significant numbers in the national economy:  Cashier II (*Dictionary of Occupational Titles* ("DOT")# 211.462.010) and Routing Clerk (DOT# 222.687-022).  (*Id.* at 117). For these reasons, the ALJ held that Plaintiff "has not been under a disability, as

defined in the Social Security Act, since March 30, 2017, the date the application was filed (20 [C.F.R. §] 416.920(g))."  (*Id.*).

## IV.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; accord *Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**V.     Analysis**

On appeal, Plaintiff raises three issues.  As stated by the parties, the issues are:

1.     Whether the ALJ posed a complete hypothetical question to the [VE];

2.     Whether the ALJ discharged [his] duty to resolve the inconsistencies between the VE testimony and the DOT; and

3.     Whether the substantial evidence in the record supports the Commissioner's RFC finding that the Plaintiff only needs to use a cane for getting to and from the workstation.

(Doc. at 21 at 11, 19, 37).

Upon consideration of the arguments being made, however, the Undersigned finds that the parties have oversimplified their statement of the issues.  The Undersigned finds that Plaintiff effectively raises five distinct issues.  The issues are as follows:  (1) whether substantial evidence supports the ALJ's RFC finding that Plaintiff needs to use a cane only for getting to and from the workstation; (2) whether the ALJ posed a complete hypothetical to the VE that accounts for Plaintiff's mental limitations; (3) whether the ALJ discharged his duty to resolve the inconsistencies between the VE testimony and the DOT as it relates to Plaintiff's limitation to "simple, routine, repetitive tasks;" (4) whether the ALJ discharged his duty to resolve the inconsistencies between the VE testimony and the DOT as it relates to Plaintiff's limitation to alternating between sitting and standing and limitation to standing for

only four hours in an eight hour workdays; and (5) whether the Appeals Council erred in refusing to consider the new evidence.

The Undersigned finds it appropriate to address the issues in a more logical order that mirrors the sequential steps of the ALJ's analysis.  For the reasons discussed below, the Undersigned finds that remand is required at the final step of the sequential analysis because the ALJ failed to discharge his duty to resolve the inconsistencies between the VE testimony and the DOT as it relates to Plaintiff's limitation to alternating between sitting and standing and limitation to standing for only four hours in an eight hour workdays and remand is appropriate on this issue. However, the Undersigned finds that none of the other issues raised require remand.

## A.   Substantial evidence supports the ALJ's RFC.

Plaintiff first contends that the ALJ's "decision was unsupported by substantial evidence because the ALJ's RFC assessment and hypothetical question to the VE did not contain the requirement to use a cane for standing, not just for walking."  (Doc. 21 at 37 (emphasis omitted)).  In support, Plaintiff notes that the medical records cited by the ALJ in support of his finding "also state that the Plaintiff has 2/5 (in hip flexors) or 3/5 strength in her left leg and 3/5 strength in the left arm."  (*Id.* at 39 (citing Tr. at 1614-15, 2016-17)).  Plaintiff contends that this evidence supports a limitation on the need to use a cane for standing rather than just ambulating.  (*Id.* (citations omitted)).  Likewise, Plaintiff maintains that "the ALJ overlooked" evidence showing that Plaintiff's left side is weaker than her right, which is important because if Plaintiff holds a cane in her right hand, she would only

have her weaker, left hand to pick up objects. (*Id.* at 39-40 (citations omitted)). Plaintiff contends that the ALJ's failure to consider these additional limitations is "not harmless as the VE testified that the individual who needs to use a cane for standing would not be able to perform the work she identified." (*Id.* at 40 (citing Tr. at 309)).

In response, Defendant argues that substantial evidence supports the ALJ's RFC. (*Id.*). Additionally, Defendant contends that Plaintiff's argument requests that the Court "inappropriately reweigh the evidence." (*Id.* at 40-41). Defendant contends that the ALJ considered Plaintiff's records as a whole, including citing her treatment records, and found that Plaintiff did not need a cane to stand. (*Id.* at 42 (citations omitted)).

An RFC is the most a claimant can still do despite the physical and mental limitations of her impairments. *See* 20 C.F.R. § 416.945(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The Eleventh Circuit has held "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

In March 2017, the SSA implemented new regulations regarding the evaluation of medical evidence for claims, like Plaintiff's, filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under these new regulations, the Commissioner "will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) . . . including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).

Under the new regulations, an ALJ does not have to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually."  20 C.F.R. § 404.1520c(b)(1).  "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness."  *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (internal citation omitted).  Furthermore, "nothing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions."  *Hand v. Comm'r of Soc. Sec.*, 786 F. App'x 220, 225 (11th Cir. 2019).  Instead, the ALJ's RFC determination must merely be supported by substantial evidence.  42 U.S.C. § 405(g).

Importantly, the "new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'"  *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 6-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)).  Nevertheless, the ALJ "is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"  *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) quoting 20 C.F.R. § 404.1527(f)(2)(i)); *see also* SSR 96-6p.

Finally, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision' enables the district court 'to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Here, the Undersigned finds Plaintiff's argument that the ALJ erred in determining that Plaintiff needs a cane only to get to and from the workstation unpersuasive.  (*See* Doc. 21 at 38).  Specifically, although Plaintiff argues that the same records that the ALJ cited also support a finding that Plaintiff needs a cane while standing, (*see id.* at 39 (citing Tr. at 1614-15, 2016-17)), this is not a ground for remand.  Rather, it is the ALJ's job to evaluate and weigh evidence and resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them."  *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

As Plaintiff concedes, the ALJ considered the records cited, specifically noting that Plaintiff did not require an assistive device in January 2017, that when Plaintiff used a cane, she had a steady gait, and that Plaintiff has negative straight leg tests. (Tr. at 113, 115-16 (citing Tr. at 722, 1592, 1615, 2017)).  Additionally, the ALJ cited

Plaintiff's testimony that she used a cane but that a cane was never prescribed. (*Id.* at 115-16 (citing Tr. at 289)). Finally, when determining whether Plaintiff had a severe impairment, the ALJ noted that Plaintiff could ambulate without difficulty before and after her procedure for a disc herniation. (*Id.* at 110 (citing Tr. at 749)). Upon reviewing the record, the Undersigned finds that the ALJ's RFC determination is supported by substantial evidence in the record and the ALJ considered Plaintiff's medical condition as a whole. (*See id.* at 112-16); *see also Dyer*, 395 F.3d at 1211. The mere fact that records could have supported the alternative finding does not require remand. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.").

As to Plaintiff's argument that the hypothetical was insufficient because it did not ask the VE to assume that Plaintiff needs a cane to stand, the Undersigned finds the argument likewise unavailing. "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must

pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).  However, an ALJ is "not required to include findings in the hypothetical that the ALJ has found to be unsupported." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

Here, although the ALJ did not present a hypothetical that included a limitation that Plaintiff use a cane to stand, the ALJ was not required to include limitations that he found to be unsupported by the record.  *See Forrester*, 455 F. App'x at 903.  As discussed above, the Undersigned finds no error with the ALJ's evaluation of the record evidence.  To the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand.  *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014).  Accordingly, the Undersigned recommends that the decision be affirmed on this issue.

### B.      The ALJ posed a complete hypothetical question to the VE.

Plaintiff next argues that "[t]he ALJ improperly failed to include limitations associated with the Plaintiff's mild limitations in understanding, remembering, and applying information, mild limitations in interacting with others, and moderate limitations in adapting or managing oneself." (*Id.* at 11 (emphasis omitted)).  Specifically, Plaintiff contends that despite finding that Plaintiff has these mental limitations, the ALJ did not include them or otherwise implicitly account for them in either the RFC or the hypothetical posed to the VE.  (*Id.* at 12).  Rather, Plaintiff

asserts that the limitation to "simple, routine, repetitive tasks" accounts only for the limitation in concentration, persistence, and pace.  (*Id.* (citing Tr. at 112, 308)).

In support, Plaintiff discusses each remaining functional level individually and argues that none are included in the limitation to simple, routine, respective tasks. (*See id*. at 12-16).  First, as to her mild limitation in understanding, remembering, or applying information, Plaintiff maintains that the limitation is insufficient because "there is a difference between performing tasks and understanding, remembering, and applying information."  (*Id.* at 12-13).  For example, Plaintiff contends that she "may not have a problem 'performing' simple tasks *per se*, but if she has difficulty understanding, learning, or remembering the instructions necessary to perform them, she might not be able to complete them."  (*Id.* at 13).

Next, as to her mild limitation with social interaction, Plaintiff argues that the RFC does not account for this limitation.  (*Id.* at 13-14).  Additionally, although Plaintiff notes that the ALJ included a limitation "to occasional interaction with co-workers, supervisors, or the general public" in the hypothetical, she maintains that such a limitation "does not account for the full spectrum of possible limitations," related to this area.  (*Id.* at 14-15 (citations omitted)).

Finally, as to her moderate limitation in adapting or managing oneself, Plaintiff argues that the RFC and the hypothetical posed to the VE include no limitation related to her ability to adapt or manage.  (*Id.* at 15-16).  Ultimately, Plaintiff contends that the ALJ's decision is not supported by substantial evidence

because the ALJ failed to explicitly or implicitly account for Plaintiff's mental limitations.  (*Id.* at 16).

In response, Defendant argues that the hypothetical posed to the VE was proper and the decision was supported by substantial evidence because the ALJ relied on the testimony of the VE, which was based on an individual who had Plaintiff's age, education, work experience, and RFC.  (*See id.* at 16-17). Additionally, Defendant argues that even if the ALJ erred in failing to include additional limitations in the RFC, the error was harmless because "the VE testified Plaintiff could perform [work as a routing clerk] even if she was limited to occasional interaction with co-workers, supervisors, or the general public."  (*Id.* at 18 (citing Tr. at 117, 313)).  Moreover, Defendant maintains that the ALJ was not obligated to include unsupported limitations in his hypothetical to the VE.  (*Id.* at 18-19). Accordingly, Defendant argues that substantial evidence supports the ALJ's decision.  (*Id.* at 19).

SSR 96-8p states, in relevant part:

> 4.    The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities *on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of . . . 20 CFR 416.945 . . . .*
>
> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must

remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C* of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It assesses an individual's abilities to perform . . . and mental [activities] (e.g., understanding and remembering instructions and responding appropriately to supervision). . . .

As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions. . . . Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

SSR 96-8p (emphasis added).

Thus, although the PRTF limitations are not the RFC, they must still be considered in conducting a "more detailed assessment" of the four criteria listed in the PRTF when formulating a claimant's RFC. SSR 96-8p; 20 C.F.R. § 404.1520a(c)(3); *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2001) (holding that while "the PRT[F] and RFC evaluations are undeniably distinct,

nothing precludes the ALJ from considering the results of the former in his determination of the latter" (citations omitted)).

The Undersigned notes that 20 C.F.R. § 404.1520a(c)(3), establishing the four functional areas an ALJ must assess, was revised in January 2017.[2]  Because there is a dearth of case law examining moderate limitations in the new functional area of understanding, remembering, and applying information, the Undersigned finds persuasive the reasoning applied in cases examining similar issues under the former version of the regulation.

In *Winschel v. Commissioner of Social Security*, for example, the Eleventh Circuit found an ALJ to have erred because while the claimant had "a moderate limitation in maintaining concentration, persistence, and pace," the ALJ failed to indicate "that medical evidence suggested [the claimant's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical [to the VE]."  631 F.3d 1176, 1181 (11th Cir. 2011).  The Court explained "the ALJ should have explicitly included the limitation in his hypothetical question to the [VE]."  *Id.*  However, the Court also noted that in *certain circumstances* an ALJ may properly find that the medical evidence of record supports only an RFC limitation of simple, routine tasks despite a moderate limitation in concentration, persistence, or pace.  *See id.* (citations omitted).

---

[2]  The revision became effective January 17, 2017.  The four areas of functioning were previously:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

Importantly, since its decision in *Winschel*, the Eleventh Circuit has recognized that limiting an individual to simple, routine work, when medical evidence demonstrates the ability to perform such work, sufficiently accounts for a moderate limitation in concentration, persistence, or pace.  *See Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 713 (11th Cir. 2015) ("[T]he ALJ accounted for Mr. Duval's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform."); *see also Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed that Mijenes could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of Mijenes's functional capacity to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace.").

Further, an ALJ's RFC determination and hypothetical questions posed to a VE can sufficiently account for a moderate limitation in concentration, persistence, and pace, if the medical evidence demonstrates that the claimant can perform those tasks despite a limitation in concentration, persistence, and pace.  *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x at 846.; *see also Reina v. Comm'r of Soc. Sec.*, 6:10-CV-1643-ORL-GJK, 2012 WL 882516, at *10 (M.D. Fla. Mar. 15, 2012) (citation omitted) ("The ALJ's hypothetical adequately accounted for Claimant's limitations in concentration, persistence or pace because the medical record indicates that Claimant can perform simple, routine tasks notwithstanding her limitations in these areas.").

As an initial matter, the Undersigned notes that the above-cited cases specifically discuss whether a limitation to simple, routine tasks or unskilled work adequately accounts for a moderate limitation in concentration, persistence, and pace.  Plaintiff, however, appears to concede that her RFC adequately accounts for her moderate limitation in this functioning area.  (*See* Doc. 21 at 12 (citations omitted)).  The Undersigned, nonetheless, finds the cases above persuasive and analogous to the extent they conclude that the RFC is supported by substantial evidence if the medical evidence of record shows that a plaintiff can perform her RFC despite her mental limitations.  The Undersigned, therefore, considers whether Plaintiff can perform her RFC despite her mental limitations in all four functioning areas.

Turning to the analysis, the Undersigned finds that the ALJ did not err in failing to include an explicit reference to each of Plaintiff's mental impairments in the RFC.  Rather, even if the ALJ erred by not discussing the mental impairments on a function-by-function assessment or examining Plaintiff's nonexertional capacity in terms of work-related functions, *see* SSR 96-8p, this error would be harmless because the ALJ adequately addressed Plaintiff's mental impairments in the RFC narrative, *see Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (*citing Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) and concluding that an error is harmless if a correct application of the regulations would not contradict the ALJ's ultimate findings).

To begin, the Undersigned notes that at the conclusion of steps two and three, the ALJ specifically addressed the need to account for the limitations in the RFC:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental functional analysis.

(Tr. at 112). The ALJ then immediately provided the RFC. (*Id.*). Thus, the ALJ's decision explicitly states that the ALJ found that Plaintiff could perform her RFC notwithstanding her mental limitations. (*Id.*).

This conclusion is further bolstered by the RFC narrative itself because the ALJ adequately addressed and considered Plaintiff's mental examinations and limitations throughout the narrative. (*See id.* at 112-16). For example, the ALJ first acknowledged Plaintiff's alleged frequent panic attacks, fear of going outside, and difficulty in concentration and focus. (*Id.* at 113). In reviewing the medical evidence, however, the ALJ highlighted that despite the diagnoses of anxiety and panic disorder, Plaintiff's mental status examinations have generally "been normal with no noted deficits in cognitive functioning." (*Id.* at 115 (citing Tr. at 1060, 1068, 1256, 1899, 1917, 1926, 1935)). Additionally, the ALJ noted that the medical records show that Plaintiff "was maintaining goals and was stable." (*Id.* (citing Tr. at 1067, 1069)). Further, the ALJ cited records showing that although Plaintiff's condition worsened in August 2018, Plaintiff's strengths still "included her abilities

to attend to activities of daily living and take care of herself." (*Id.* (citing Tr. at 2058)). Finally, the ALJ specifically found persuasive Dr. Suresh Sarma, MD's opinion that while Plaintiff has mental health symptoms, she "has shown a good response to medication on a number of occasions and she is less compulsive when her anxiety is well controlled." (*Id.* at 116 (citing Tr. at 1897, 1915, 1924, 1934)).

Having summarized the medical records, the ALJ concluded that "[t]he claimant's general anxiety and panic disorder are accounted for by limiting her to simple repetitive tasks." (*Id.*). Notably, the ALJ's determination that Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace and moderate limitations in adapting or managing oneself arose from her anxiety and panic disorder. (*Id.* at 111). Thus, the concluding statement explicitly shows that the ALJ imposed the limitation to simple, routine, respective tasks to account for Plaintiff's mental limitations arising out of the anxiety and panic disorder. (*See id.* at 111-12, 116).

Because the ALJ fully discussed the medical evidence of record relating to Plaintiff's mental limitations and specified how the RFC accounted for her mental limitations, the Undersigned finds that the ALJ properly addressed and accounted for Plaintiff's mental limitations in the RFC and the RFC narrative. (*See id.* at 115-16).

Moreover, the records the ALJ relied on when undertaking his RFC narrative are consistent with his findings in the PRFT. (*Compare id.* at 111-12, *with id.* at 115-16). First, when analyzing Plaintiff's limitations in understanding, remembering, or

20

applying information, the ALJ noted that while Plaintiff has alleged difficulty focusing, her mental status examinations were normal with no noted deficits in cognitive functioning and she reported no problems with memory loss or confusion. (*Id*. at 111 (citing Tr. at 1060, 1068, 1256, 1899, 1917, 1926, 1935)).  Second, in analyzing the limitation in interacting with others, the ALJ noted that although Plaintiff did not want to leave home, she was "able to interact appropriately when seeking medical care and has generally been described as pleasant and cooperative." (*Id.* (citing Tr. at 1084, 1098, 1729)).  Third, in analyzing the limitations in concentrating, persisting, or maintaining pace, the ALJ found the limitation arose from Plaintiff's issues with obsessive compulsive disorder.  (*Id.*).  Nevertheless, the ALJ highlighted that Plaintiff's strengths include her ability to attend to tasks of daily living and her ability to assist her minor disabled daughter in the morning.  (*Id.* (citing Tr. at 2058)).  Fourth, in analyzing Plaintiff's limitations in adapting and managing oneself, the ALJ found the limitation arose from Plaintiff's panic attacks and fear of leaving home.  (*Id.*).  Nevertheless, the ALJ cited Plaintiff's ability to make arrangements for medical treatments and take care of herself and her disabled daughter.  (*Id.* at 111-12 (citing Tr. at 1051-53)).

In light of the similarities between the ALJ's reasoning when performing the PRTF and his discussion of the medical evidence in the RFC narrative, the Undersigned finds that the ALJ considered Plaintiff's mental limitation when determining her RFC.  (*See id.* at 111-12, 115-16).  Additionally, based on the records cited by the ALJ, the Undersigned finds that the RFC is supported by substantial

evidence.  (*See id.*).  Accordingly, the Undersigned finds that the ALJ sufficiently

accounted for Plaintiff's mental limitations by determining an RFC that Plaintiff can

perform despite her mental limitations.  *See Mijenes v. Comm'r of Soc. Sec.*, 687 F.

App'x 842, 846 (11th Cir. 2017).

Additionally, the Undersigned finds that the hypothetical presented to the VE

also implicitly accounted for Plaintiff's mental limitations.  (*See* Tr. at 309-12).  The

ALJ posed a hypothetical that encompassed all limitations in the RFC and included

a limitation to only occasional interaction with co-workers, supervisors, or the

public.  (*Id.*).  The VE testified that without the additional limitation of only

occasional interaction with co-workers, supervisors, or the public, Plaintiff could

perform both positions of routing clerk and cashier II.  (*Id.* at 312-13).  The VE also

testified that with the additional limitation of only occasional interaction with co-

workers, supervisors, or the public, Plaintiff could perform the position of routing

clerk.  (*Id.* at 312-13).  Because the Undersigned finds that the RFC implicitly

accounts for Plaintiff's mental limitations and the hypothetical included all

limitations in the RFC, the Undersigned finds that the ALJ properly posed a

hypothetical that "comprise[d] all of the claimant's impairments," even without the

additional limitation of only occasional interaction with co-workers, supervisors, or

the public.  *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).

In sum, the Undersigned finds that both the RFC and the hypothetical posed

to the VE implicitly account for Plaintiff's mental limitations.  Accordingly, the

Undersigned recommends that the ALJ's decision be affirmed on this issue.

C.   **No apparent conflict exists between Plaintiff's RFC and a reasoning level two position.**

Plaintiff next contends that "[t]he ALJ failed to discharge [his] duty to resolve apparent inconsistencies between the VE testimony and the DOT, including the inconsistencies with the reasoning levels." (Doc. 21 at 19 (emphasis omitted)). In support, Plaintiff maintains that because the VE's testimony was inconsistent with the DOT and the ALJ failed to question the VE on the inconsistency, the ALJ's decision is not supported by substantial evidence. (*Id.* at 21 (citations omitted)).

Essentially, Plaintiff argues that jobs with a reasoning level above one conflict with a limitation to "simple, routine, repetitive tasks." (*Id.* at 21-22). Relying on non-binding case law, Plaintiff essentially contends that because she is limited to "simple, routine, repetitive tasks," there is an apparent conflict between the VE testimony and the reasoning requirements of the jobs Plaintiff was found to be able to perform. (*See id.* at 22-25). Thus, Plaintiff maintains that the ALJ needed to investigate and resolve the inconsistency and his failure to do so was reversible error. (*Id.* at 25-26).

In response, Defendant argues that there is no apparent conflict between a limitation to simple, routine, repetitive tasks and the reasoning level two job identified by the VE. (*Id.*). Thus, Defendant argues that substantial evidence supports the ALJ's decision that Plaintiff could perform the job of routing clerk, which exists in significant numbers in the national economy. (*Id.* at 28-29 (citations omitted)). In support, Defendant addresses the case law cited by Plaintiff and

essentially contends that Eleventh Circuit precedent establishes that no conflict exists and that the definitions of simple tasks, routine tasks, and repetitive tasks comport with the definition of a reasoning level two.  (*See id.* at 29-33 (citations omitted)).  Finally, Defendant cites additional non-binding cases in which courts concluded that no apparent conflict exists between a limitation to simple, routine, repetitive tasks and jobs requiring a reasoning level of two.  (*Id.* at 33-36).  Thus, Defendant maintains that the ALJ did not need to investigate any inconsistency because none exists.  (*Id.* at 36).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).  "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform."  *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004).  An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform.  *Winschel*, 631 F.3d at 1180.  If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

In addition, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it.  The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence."  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018).  Thus, an ALJ must ask the vocational expert whether a conflict between his or her testimony and the DOT exists and must ask for an explanation if there appears to be a conflict.  *Id.* at 1363.  Moreover, whenever a conflict is apparent, the ALJ must ask the vocational expert about it.  *Id.*  An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony.  At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  *Id.* at 1365.  "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them."  *Id.* at 1363.  This is an independent obligation of the hearing examiner.  *Id.*

As an initial matter, the Undersigned finds that there is no apparent conflict between the limitation to "simple, routine, repetitive tasks" and an occupation with a reasoning level two.  The Eleventh Circuit specifically addressed this contention in *Valdez v. Commissioner of Social Security* and determined that the two are not inconsistent.  *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (concluding that jobs with a reasoning level of two are not inconsistent with a limitation to "simple, routine, and repetitive tasks").

Notably, Plaintiff argues that at least one jurist in this Court has found that this statement is dicta and that the Court should, therefore, follow the more recent decision in *Albra v. Acting Commissioner of Social Security*, 825 F. App'x 704, 708 (11th Cir. 2020). (*See* Doc. 21 at 24-25). This Court has previously rejected this argument, noting that because both *Valdez* and *Albra* are unpublished, neither decision is binding on this Court. *Peterson v. Comm'r of Soc. Sec.*, No. 2:19-cv-566-FtM-29NPM, 2020 WL 6708022, at *3 (M.D. Fla. Nov. 16, 2020), appeal docketed No. 21-10086 (11th Cir. January 11, 2021). Thus, both opinions are persuasive "only insofar as their legal analysis warrants." *Id.* (quoting *United States v. Rodriquez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004)).

Moreover, the Eleventh Circuit recently addressed the issue as it relates to a similar limitation. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127 (11th Cir. 2021). Specifically, the Eleventh Circuit determined that there was no apparent conflict between an RFC that limited the plaintiff's ability to "understand, carry-out, and remember simple instructions" and jobs with a reasoning level of two. *Id.* at 1134. Rather, the Eleventh Circuit concluded that the difference between a reasoning level of one and a reasoning level of two was the "length" of the instruction, not the complexity. *Id.* at 1135 (emphasis omitted). Importantly, the Eleventh Circuit analogized the plaintiff's limitation in that case to the limitation addressed by the Fourth Circuit in *Lawrence v. Saul*, 941 F.3d 140, 143-44 (4th Cir. 2019). *Id.* at 1135-36. In *Lawrence*, the Fourth Circuit concluded that no apparent

conflict exists between a limitation to simple, routine, and repetitive tasks and an occupation requiring level two reasoning. *Lawrence*, 941 F.3d at 143.

While the limitation in this case is distinguishable from that in *Buckwalter*, it is identical to the limitation in *Lawrence*. *Compare Lawrence*, 941 F.3d at 143, *with* (Tr. at 112). In light of the Eleventh Circuit's reliance on *Lawrence*, *see Buckwalter*, 997 F.3d at 1135-36, the Undersigned finds the Fourth Circuit's decision in *Lawrence v. Saul* highly persuasive, *see Lawrence*, 941 F.3d at 143-44. As noted above, the Fourth Circuit concluded in *Lawrence* that no apparent conflict exists between a limitation to simple, routine, and repetitive tasks and an occupation requiring level two reasoning. *Id.* (collecting cases and noting that "[i]n finding no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning, [it] join[s] every other circuit to consider the issue").

Thus, insofar as *Lawrence* is consistent with the Eleventh Circuit's holding in *Valdez*, the Undersigned joins the jurists of this Court who have relied on *Valdez* to find no apparent conflict exists between "simple, routine, and repetitive" and a reasoning level two occupation. *See, e.g.*, *Rae v. Saul*, No. 8:19-cv-2987-T-TGW, 2021 WL 211269, at *7 (M.D. Fla. Jan. 21, 2021); *Korstanje v. Comm'r of Soc. Sec.*, No. 8:19-cv-3003-T-MAP, 2021 WL 129822, at *4 (M.D. Fla. Jan. 14, 2021); *Green v. Saul*, No. 8:19-cv-2021-T-TGW, 2020 WL 5743185, at *10 (M.D. Fla. Sept. 25, 2020); *Fletcher v. Saul*, No. 8:19-cv-1476-T-23AAS, 2020 WL 4188210, at *1 (M.D. Fla. July 21, 2020).

Because the Undersigned determines that no apparent conflict exists between a limitation to "simple, routine, repetitive" tasks and a reasoning level two occupation, the Undersigned finds that Plaintiff could perform the work of a routing clerk, which has a reasoning level of two.

Additionally, the Undersigned notes that the ALJ found that jobs – *i.e.*, multiple jobs – existed in significant numbers in the national economy.  (*See* Tr. at 116).  In listing out the two positions of routing clerk and cashier II, the ALJ implicitly found that each job exists in significant numbers in the national economy. (*See id.* at 116-17).

Even assuming *arguendo* that the ALJ had not found that each job individually existed in significant numbers, Eleventh Circuit precedent shows that the Court may make such a finding.  *See Valdez*, 808 F. App'x at 1009.  Here, the ALJ noted that 94,000 routing clerk jobs existed.  (Tr. at 116-17).  Importantly, the Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations."  *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015).  Nonetheless, this Court has found a lower number of jobs significant.  *See Blackmon v. Saul*, No. 8:19-cv-3040-T-AEP, 2021 WL 222777, at *4 (M.D. Fla. Jan. 22, 2021) (finding 7,000 jobs significant).  Thus, the Undersigned finds that the position of routing clerk exists in significant numbers.  (*See* Tr. at 116).  The Undersigned, therefore, finds that the ALJ did not err in finding that Plaintiff could

perform the job of routing clerk, which exists in significant numbers in the national economy.  (*See id.*).

As to Plaintiff's argument that the ALJ erred in not addressing whether an apparent conflict exists Plaintiff's limitation to simple, routine, and repetitive tasks and the VE's testimony that she can perform the work of cashier II, a reasoning level three position, the Undersigned finds any error would be harmless.  Specifically, because the ALJ properly found that Plaintiff can perform the job of routing clerk, any error by the ALJ regarding the position of cashier II would not contradict the ALJ's ultimate finding that Plaintiff can perform work that exists in the national economy.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013)  (*citing Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) and concluding that an error is harmless if a correct application of the regulations would not contradict the ALJ's ultimate findings).  Accordingly, the Undersigned recommends that the decision be affirmed on this issue.

> **D.    The ALJ failed to discharge his duty to resolve an apparent conflict between the VE testimony and the DOT.**

Plaintiff next contends that "[t]he ALJ failed to discharge [his] duty to resolve apparent inconsistencies between the VE testimony and the DOT, including the inconsistencies with the . . . sit-stand requirements[] and exertional requirements of the jobs the ALJ found the Plaintiff could perform" and the decision is, therefore, not supported by substantial evidence.   (Doc. 21 at 19-21 (emphasis omitted)).  Specifically, Plaintiff maintains that the ALJ did not address inconsistencies between

her limitations as to sitting and standing and the limitation to light work, which requires standing or walking for six hours in an eight-hour workday.  (*Id.* at 26 (citations omitted)).  In support, Plaintiff notes that the ALJ asked the VE to "assume the individual 'must alternate sitting and standing while remaining at the workstation,'" but the ALJ did not ask whether the VE's testimony that Plaintiff could perform the positions of cashier II and routing clerk was consistent with the DOT.  (*Id.* at 27 (quoting Tr. at 307-08)).

While Plaintiff concedes that the ALJ "attempt[ed] to resolve this conflict in his decision by stating that the VE has extensive 35+ years of experience," Plaintiff maintains that the ALJ erred in failing to "undertake a meaningful investigatory effort to uncover apparent conflicts" as required.  (*Id.* (citing Tr. at 117; *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2018))).  Thus, Plaintiff argues that the action should be remanded for the ALJ to resolve the apparent conflicts between the VE's testimony and the RFC.  (*Id.* at 28).

In response, Defendant contends that "[t]he ALJ fulfilled his duty under SSR 00-4p when he relied on the VE's knowledge and expertise in resolving any potential inconsistency regarding the VE's sit/stand opinion."  (*Id.* (citations omitted)).  Additionally, Defendant contends that Plaintiff's argument, which relies on SSR 83-12, is based on her "lay opinion that the job identified . . . could not be performed with a sit/stand option."  (*Id.* at 27).  Defendant maintains, however, that the ALJ properly sought VE testimony to determine whether certain jobs could allow a claimant to alternate sitting and standing, as required by SSR 83-12.  (*Id.*).  Thus,

Defendant argues that "the ALJ did not err [in] relying on the VE's testimony." (*Id.*).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel*, 631 F.3d at 1180. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

In addition, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). Thus, an ALJ must ask the vocational expert whether a conflict between his or her testimony and the DOT exists and must ask for an explanation if there appears to be a conflict. *Id.* at 1363. Moreover, whenever a conflict is apparent, the ALJ must ask the vocational expert about it. *Id.* An

apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony.  At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  *Id.* at 1365.  "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them."  *Id.* at 1363.  This is an independent obligation of the hearing examiner.  *Id.*

As noted above, pursuant to SSR 00-4p, the ALJ must resolve any inconsistencies between the VE testimony and the DOT.  SSR 00-4p, (S.A.A. 2000), 2000 WL 1898704.  Similarly, pursuant to SSR 83-12 the ALJ must obtain VE testimony to determine the implications of an unusual limitation of ability to sit or stand.  SSR 83-12 (S.S.A. 1983), 1983 WL 31253.  Despite these obligations, the ALJ failed to ask the VE about any inconsistencies and the basis for the VE's opinion that Plaintiff could perform the work of cashier II and routing clerk notwithstanding her standing limitation and her sit/stand limitation.  (*See* Tr. at 307-14).

Notably, some jurists in this Court have found that there is no conflict between a sit/stand limitation and the DOT, which does not address a sit/stand limitation, because SSR 83-12 merely requires the ALJ "to seek VE testimony to determine whether certain jobs could allow a claimant to alternate sitting and standing."  *See, e.g.*, *Lewis v. Comm'r of Soc. Sec.*, No. 3:18-cv-411-J-PDB, 2019 WL 4727814, at *6 (M.D. Fla. Sept. 27, 2019).  Nevertheless, in *Lewis v. Commissioner of Social Security*, cited by Defendant, the Court found that the ALJ properly fulfilled his

duty because the ALJ noted that the DOT does not address a sit/stand limitation and questioned the VE on the basis of the VE's testimony. *Id.* Accordingly, the Court found that the ALJ "offer[ed] a reasonable explanation for the discrepancy, and detail[ed] in his decision how he has resolved the conflict." *Id.* (citing *Washington*, 906 F.3d at 1356). In so finding, the Court implicitly concluded that the ALJ must determine the basis of the VE's testimony to resolve any discrepancy. *See id.*

The Undersigned finds that there is an apparent conflict between the DOT for each of the jobs at issue here and Plaintiff's limitation to standing only four hours of an eight-hour workday. *See Washington*, 906 F.3d at 1365 (noting that an apparent conflict is one that apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony"). Specifically, the DOTs of both the routing clerk and cashier II state that the job requires light work and "[m]ay involve significant standing, walking pushing, and/or pulling." (*See* Doc. 21-1 at 6; Doc. 21-2 at 5). Light work requires the individual to stand for a period of six hours in an eight-hour workday. SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *6. Because there is an apparent conflict between the DOT and the VE's testimony, the Undersigned finds that the ALJ was under a duty to resolve the apparent conflict under the manner prescribed in *Washington*. *See Washington*, 906 F.3d at 1356.

This finding is bolstered by the ALJ's concession in his decision that there is an inconsistency between the VE's testimony and the DOT. (*See* Tr. at 117). The ALJ noted in his decision that "[a]lthough the vocational expert's testimony is

inconsistent with the information contained in the [DOT], there is a reasonable explanation for the discrepancy." (*Id.*).  Specifically, the ALJ found that the VE's "opinion is based [on] her 35+ years of experience in placing individuals in jobs in the community, placement experience, market surveys, interaction with colleagues and people in the workplace, review of vocational articles, training seminars that she has attended, and knowing how these jobs are performed in the national economy." (*Id.*).  However, the ALJ failed to ask the VE whether the VE's testimony was consistent with the DOT, and, if not, the ALJ failed to elicit testimony as to the basis of the VE's opinion.  (*See id.* at 307-14).  Accordingly, the ALJ's finding that the VE's opinion is based on the VE's experience appears to be nothing more than a post-hoc assumption.  (*See id.*).

Allowing an ALJ to make such an assumption – even a likely assumption – contravenes the Eleventh Circuit's reasoning in *Washington v. Commissioner of Social Security*.  *See* 906 F.3d 1353 (11th Cir. 2018).  Specifically, following the promulgation of SSR 00-4p, which required the ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts," the Eleventh Circuit imposed specific obligations on the ALJ to resolve such conflicts.  *Id.* at 1362 (alteration in original). In so doing, the Eleventh Circuit superseded its holding in *Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999), which allowed an ALJ to rely solely on the VE's testimony when the testimony conflicted with the DOT.  *Washington*, 906 F.3d at 1362.

Here, the ALJ failed to comply with the requirements of *Washington* – and SSR 00-4p – because the ALJ failed to elicit and obtain a reasonable explanation

from the VE.  *See id.*  Rather, the ALJ appears to have *assumed* an explanation the ALJ deemed to be reasonable.  (*See* Tr. at 117).  Because the ALJ failed to properly discharge his duty, the Undersigned finds that the ALJ's decision is not supported by substantial evidence and remand on this ground is required.  *See Washington*, 906 F.3d at 1362.

### E.   The Appeals Council did not err in refusing to consider new evidence.

Lastly, Plaintiff argues that the Appeals Council improperly refused to consider evidence dated one to eight months after the ALJ's decision, including evidence showing a significant worsening in Plaintiff's spine problems.  (*Id.* at 40-41 (citations omitted)).  In support, Plaintiff contends that the evidence was "relatively close in time to the time period prior to the ALJ's decision" and "reinforces the Plaintiff's allegations about pain and the need to use a cane."  (*Id.* (citations omitted)).  Thus, Plaintiff maintains that remand is necessary for the Commissioner to properly consider Plaintiff's need to use a cane to stand.  (*Id.* at 41).

In response, Defendant argues that the Appeals Council properly determined that the records dated after the ALJ's decision were not chronologically relevant because none of the records "contain[ed] any medical opinions that relate back to the relevant period."  (*Id.* at 42-45 (citations omitted)).  Defendant asserts that the new evidence "show[ed] that Plaintiff's condition worsened after the ALJ's decision."  (*Id.* at 44).  Thus, Defendant maintains that substantial evidence supports the Appeals Council's denial of review.  (*Id.* at 44-45).

Generally, the administrative process permits a claimant to present new evidence at each stage of the administrative process. *Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x. 939, 943 (11th Cir. 2017); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b).   Evidence submitted for the first time to the Appeals Council is determined under a Sentence Four analysis. *Ingram*, 496 F.3d at 1253.   "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"   *Id.* (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)); *Ashley*, 496 F.3d at 943 (citing *Washington v. Comm'r Soc. Sec.*, 806 F.3d 1317, 1320 (11th Cir. 2015)).   New evidence is considered material and therefore warranting a remand if "a reasonable possibility exists that the evidence would change the administrative result." *Washington v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 871, 876 (11th Cir. 2019) (quoting *Washington*, 806 F.3d at 1321).   In addition, the new evidence must not be cumulative of other evidence of record.   *Ashley*, 496 F.3d at 943-44.   Evidence is considered "'chronologically relevant' if it relates to the period on or before the date of the ALJ's hearing decision." *Washington*, 791 F. App'x at 876 (quoting 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5)).   "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington*, 806 F.3d at 1321 (citations omitted).

As an initial matter, Plaintiff submitted five sets of records to the Appeals Council:  (1) Charlotte Behavioral Health Care dated November 12, 2018, to

September 3, 2019; (2) Bayfront Port Charlotte dated January 16, 2019, to September 4, 2019; (3) Family Health Centers dated April 25, 2019, to December 15, 2019, April 30, 2019 to October 28, 2019, and December 30, 2019; (4) Bayfront Health dated May 22, 2019, to July 30, 2019; and (5) St. Anthony Health Care dated May 23, 2019, to August 7, 2019. (*See* Tr. at 2). Plaintiff's briefing, however, does not explicitly inform the Court which records she asserts the Appeals Council wrongfully refused to consider. (*See* Doc. 21 at 40-41). In fact, Plaintiff cites only to records from (1) St. Anthony Health Care, (2) Bayfront Health (dated May 22, 2019, to July 30, 2019), and (3) Family Health Center. (*See id.* (citing Tr. at 15-16, 18-91, 22-21, 84)). Additionally, Plaintiff references the existence of a cane prescription, but fails to provide a record citation. (*Id.* at 41). Upon review of the record, the Undersigned assumes this prescription is the June 8, 2019 prescription from Dr. Little. (*See* Tr. at 86).

Because Plaintiff cites only to records from St. Anthony Health Care, Bayfront Health (dated May 22, 2019, to July 30, 2019), and Family Health Center, (*see id.* (citing Tr. at 15-16, 18-91, 22-21, 84)), all of which were rejected by the Appeals Council for failing to be chronologically relevant, (Tr. at 2), the Undersigned construes Plaintiff's arguments as relating only to these records.[3] This understanding

---

[3] To the extent Plaintiff intended to argue that the Appeals Council erred in refusing to consider the records of Charlotte Behavioral Health Care dated November 12, 2018 to September 3, 2019, and Bayfront Port Charlotte dated January 16, 2019 to September 4, 2019, Plaintiff failed to cite a single record warranting remand on this issue. (*See* Doc. 21 at 40-41).

is further bolstered by Plaintiff's argument that the Appeals Council erroneously refused to consider the evidence simply because it was dated after the date of the ALJ's decision.  (Doc. 21 at 41).

Notably, the records cited by Plaintiff are dated anywhere between one to nine months after the date of the ALJ's decision.  (*See id*. at 10-95).  The Eleventh Circuit has held that medical opinions based on treatment that occurred after the date of the ALJ's decision may be chronologically relevant if the records relate back to the relevant period of the decision.  *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1322-23 (11th Cir. 2015).  For example, in *Washington v. Commissioner of Social Security*, the Eleventh Circuit concluded that a medical opinion based on treatment occurring after the ALJ's decision was chronologically relevant because (1) the opinion was based on the plaintiff's description of his mental health symptoms during the relevant period, (2) the evaluating psychologist reviewed the plaintiff's treatment records from the relevant period, and (3) there was no evidence of the plaintiff's mental health decline since the decision.  *Id.* at 1319, 1322-23.

Here, Plaintiff cites no record specifying that the opinion was based on Plaintiff's descriptions of pain during the relevant time.  (*See* Doc. 21 at 40-41).  The Undersigned notes, however, that Dr. Little, whose records are contained in the new evidence, examined and treated Plaintiff during the relevant period.  (*See*, *e.g.*, Tr. at 282, 1014-53, 1321-33).  Thus, Dr. Little would likely have been aware of Plaintiff's previous complaints and treatments.  (*See id.*).

By Plaintiff's own admission, however, "[t]he MRIs showed significant worsening in the Plaintiff's spine problems, compared to the October, 2016, MRIs the ALJ considered." (*Id.* at 41). The MRIs were taken after the date of the ALJ's decision. (*Id.*). Thus, unlike in *Washington*, in which there was no assertion or evidence of a worsening of the condition*, see Washington*, 806 F.3d at 1322, the records here suggest that the problem continued to worsen following the ALJ's decision, (*see* Tr. at 41).

In light of the worsening condition and the lack of any indication that subsequent opinions – by Dr. Little or others – were based on Plaintiff's complaints during the relevant time period, the Undersigned cannot find that the Appeals Council erred in finding the evidence was not chronologically relevant. *See Washington*, 806 F.3d at 1322-23. Accordingly, the Undersigned recommends that the decision be affirmed on this issue. *See id.*

## VI.   Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds that the ALJ erred in failing to resolve apparent conflicts between the VE's testimony and the information contained in the DOT as it relates to Plaintiff's limitation to alternating between sitting and standing and limitation to standing for only four hours in an eight hour workdays. Accordingly, the Undersigned recommends that the action be remanded for the ALJ to re-evaluate whether work exists in significant numbers that Plaintiff can perform given her RFC,

specifically identifying and resolving any apparent conflicts between the testimony of the VE and the DOT.

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.      The decision of the Commissioner be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.      The Commissioner be instructed on remand to do the following:

Re-evaluate whether work exists in significant numbers that Plaintiff can perform in light of her RFC, specifically identifying and resolving any apparent conflicts between the testimony of the VE and the DOT.

3.      Plaintiff be instructed that if she prevails on remand, Plaintiff must comply with the November 14, 2012 Order (Doc. 1) in Case Number 6:12-mc-124-Orl-22.

4.      The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on June 28, 2021.

Mac R. McCoy
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the

Report and Recommendation's factual findings and legal conclusions.  A party's

failure to file written objections waives that party's right to challenge on appeal any

unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties